The HELENA DAILY WORLD *v.*
Honorable L.T. SIMES, Judge

05-146                                    229 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered February 16, 2006

*Wright, Lindsey & Jennings, LLP*, by: *Troy Anthony Price*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Sherri L. Robinson*, Ass't Att'y Gen., and *Scott Richardson*, Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Justice. The Helena Daily World (Daily World) petitions this court for a writ of certiorari directing the respondent, Phillips County Circuit Judge L.T. Simes, to dissolve a January 6, 2005 injunction that prevented the Daily World from reporting testimony given in open court during a pre-trial hearing in the case of *City of West Helena v. Weaver*, Civ. No. 2005-4. Our jurisdiction in this case is pursuant to Ark. Sup. Ct. R. 6-1. We agree with petitioner that the restraining order is too broad and is an unconstitutional prior restraint on the press. We grant the writ of certiorari and direct the respondent to modify his order in accordance with this opinion.

This petition was previously considered by this court in *Helena Daily World v. Phillips County Circuit Court*, 361 Ark. 146,

205 S.W.3d 134 (2005) (*per curiam*). In that per curiam opinion, we granted the request that certain documents be certified under seal, and we declined to address the remaining issues until those documents were received and briefed.

The *City of West Helena v. Weaver* case involved a highly publicized dispute between Mayor Weaver and the West Helena City Council over Weaver's attempt to oust the city's chief of police. Immediately before a January 6 hearing in that case, Weaver filed a motion seeking the respondent's recusal. The recusal motion was the first order of business at the hearing. During the court's consideration of the matter, Weaver testified that the respondent had initiated an improper *ex parte* conversation with him, in which he asked Weaver to deal leniently with the police chief. Weaver also testified that the respondent had an interest in a radio station that broadcast the city council meetings, and that Weaver had filed a complaint with the Judicial Discipline and Disability Commission based on these allegations. It was this testimony, concerning allegations of misconduct on the part of the respondent, given in open court by Mayor Weaver at the January 6 hearing, that was the object of the restraining order. The restraining order prohibited all communication of Weaver's testimony relating to the Arkansas Judicial Discipline and Disability Commission. A reporter for the Daily World was present at that public hearing. Shortly after Weaver's testimony, the respondent closed the hearing and the meeting was adjourned to his chambers. The Daily World challenges the constitutionality of the respondent's restraining order to the extent that it prohibits the Daily World from reporting statements made at a hearing that was open to the public.

Petitioner raises a single point on appeal: In light of the limits on prior restraint imposed by the federal and state constitutions, the trial court abused its discretion by enjoining non parties from publishing or otherwise communicating statements given by a witness in open court.

### Standard of review

A writ of *certiorari* is an extraordinary writ that can only be granted when the petitioner is clearly entitled to the relief sought. *Irvan v. Kizer*, 286 Ark.105, 689 S.W.2d 548 (1985). For *certiorari* to lie, there must be an excess of jurisdiction that is clear from the face of the record, the proceedings must be erroneous on the face of the record, and there must be no adequate remedy at law. *King v.*

*Davis*, 324 Ark. 253, 920 S.W.2d 488 (1996). When a petitioner requests a writ of *certiorari* rescinding an order restraining speech, it will only be issued if the judge's action on its face was a plain, manifest, clear, and gross abuse of discretion. *Arkansas Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 20 S.W.3d 301 (2000).

## Prior Restraint

A prior restraint is a governmental restriction on speech or publication before its actual expression. *Black's Law Dictionary*, 1212 (7th ed. 1999). It restricts *potential* speech. Courts often find that prior restraints violate the First Amendment. The First Amendment is made applicable to the states by the Fourteenth Amendment, and it provides in part, "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press . . ." Likewise, Ark. Const., art. 2, § 6 provides, "The liberty of the press shall remain forever inviolate."

This court does not favor prior restraints. We have held that, "[A]ny restraint on the freedom of the press, even though narrow in scope and duration, is subject to the closest scrutiny and will be upheld only upon a clear showing that an exercise of this right presents a clear and imminent threat to the fair administration of justice." *Arkansas Gazette Co. v. Lofton*, 269 Ark. 109, 110, 598 S.W.2d 745, 746 (1980). We have also stated that a prior restraint bears a heavy presumption against its constitutional validity. *Orrell v. City of Hot Springs*, 311 Ark. 301, 844 S.W.2d 310 (1992).

The United States Supreme Court also views prior restraints with particular disfavor. In *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), the Court held that an order restraining the release of testimony given in open court was an unconstitutional prior restraint. That case involved the issuance of an order restraining the release of any admissions or confessions made by an adult defendant in a criminal case at a preliminary hearing. In the course of holding the prior restraint unconstitutional, the Court said, "The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Id.* The Court further said, "[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom." *Id.* at 568. The Court also said, "[B]ut once a public hearing has been held, what transpired there could not be subject to prior restraint." *Id.* In additional commentary on prior restraints, the Supreme Court

proclaimed, "The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events." *Id.* at 559.

This court has said, "Under *Nebraska Press*, trial judges may not order reporters not to reveal lawfully acquired information once they have been admitted to the court room." *Arkansas Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 781, 20 S.W.3d 301, 307 (2000). Even though the presumption against prior restraints is strong, it is not absolute. In *Zimmerman*, our recent decision finding a restraining order issued by a judge in a juvenile proceeding to be an improper prior restraint, we discerned two critical points that decided the case. First, the proceedings in that case were open to the public; second, the information that the order sought to restrict was already in the public domain. As is apparent in *Zimmerman*, because of the odium attached to prior restraints and the very strict scrutiny under which they are analyzed by this court, a prior restraint must be narrowly tailored to ensure that it restricts no more speech than is necessary to accomplish its objective. In this case, the order issued by the respondent is broad in its scope. The order enjoined:

> (A)ny and all persons and parties to the proceeding and the entities known as the Daily World and any and all attorneys and any and all persons present at the hearing on said date from communicating in any fashion whatsoever, i.e. speaking, writing, printing, distributing, or disseminating any information heard or received at the said hearing relating to the Arkansas Judicial Discipline and Disability Commission.

It is undisputed that the statements targeted by the restraining order in the present case were made in open court, but prior to their utterance in court they were not in the public domain. Thus, applying the analytical framework provided by prior decisions of this court and the United States Supreme Court, the question becomes whether the justifications for the restraining order offered by the respondent are of sufficient weight to eclipse the substantial weight of the interests protected by the First Amendment, which dictate the heavy presumption against the constitutional validity of prior restraints. The respondent must show that the communication of the testimony given in open court would present a clear and imminent threat to the fair administration of justice. *Arkansas Gazette Co. v. Lofton*, 269 Ark. at 110, 598 S.W.2d at 746.

The respondent has advanced three justifications in defense of the above order. First, he asserts that Ark. Code Ann. § 16-10-404 (Repl. 1999), imposes a duty of confidentiality on proceedings related to judicial misconduct before there has been a finding of probable cause. The respondent relies on Ark. Code Ann. § 16-10-404(b)(2) in reaching this conclusion. Arkansas Code Ann. § 16-10-404(b)(2) provides in part, "All proceedings held prior to a determination of probable cause and the filing of formal charges shall be confidential." Although subparagraph (b)(2) provides that all proceedings held prior to a determination of probable cause on the complaint are to be confidential, that is a general code provision applied exclusively to the Arkansas Judicial Discipline and Disability Commission.

Even if there were a statutory duty of privacy in this case, when that duty is advanced as a justification for a prior restraint, the state objectives protected by that duty must still be balanced against the heavy presumption against prior restraints that the First Amendment requires. For example, in *Oklahoma Publ'g Co. v. Dist. Court*, 430 U.S. 308 (1977), the United States Supreme Court struck down an order restraining the publication of information gleaned from a juvenile detention hearing that was attended by members of the press without objection from the defense counsel, despite the fact that Oklahoma statutes, which had been advanced as justifications for the order, provided that juvenile proceedings were to be held in private unless a court order specifically directed otherwise, and that juvenile records were restricted in the same manner. In that case the Court said, "[T]hose who see and hear what transpires in the courtroom may report it with impunity." *Id.* at 311. The Court also observed, "[O]nce a public hearing has been held, what transpires there could not be subject to prior restraint." *Id.*

Similarly, in *Zimmerman*, Arkansas statutes aimed at protecting the confidentiality of juvenile offenders and promoting their rehabilitation were advanced as justifications for a restraining order. *Zimmerman*, 341 Ark. at 783. Nevertheless, we ruled that the state objectives embodied in the statutes were insufficient to sustain a broad prior restraint when the information that was the object of the restraining order had been revealed in proceedings open to the public and had been in the public domain prior to those proceedings.

Thus, even assuming that the respondent's interpretation of section 16-10-404(b)(2) were correct, it does not dispose of the case; instead, the state objectives enshrined in the statute are factors to be weighed against the heavy presumption that prior restraints are invalid. A statute cannot authorize a violation of the First Amendment.

The respondent also contends that bringing to light heretofore unsupported allegations of a confidential nature may irreparably damage the reputation of a judge even if the allegations are frivolous. We do not regard the defense and maintenance of the judicial reputation as an insignificant concern. However, if allegations such as the ones at issue are groundless, the Judicial Discipline and Disability Commission's investigation will not find probable cause, and formal charges will not be filed. That fact will be in the public domain and, to some extent, repair any damage done to the judge's reputation. Also, if formal charges are filed, the judge is entitled to a public hearing at which time he will have an opportunity to exonerate himself in the court of public opinion. *See* section 16-10-404(b)(2).

As the final justification for the restraining order, the respondent asserts that publicizing details of a public complaint could negatively affect a judge's ability to maintain public confidence in the judicial system. Maintaining public confidence in the judicial system is likewise a very important and necessary objective, and it is dependent on the public's perception of the impartiality of the judiciary. Restricting the public's knowledge of events that transpire in the court room may give rise to a suspicion of wrongdoing in the public mind, regardless of whether any basis for the suspicion in fact exists. The presence of the press in the courtroom serves a watchdog function, and it provides a salutary scrutiny which is a sure deterrent to governmental misconduct. In effect, the press in the courtroom serves as the eyes and ears of the people, who are necessarily absent from any particular proceeding. Additionally, in this particular case the proceeding concerned an issue, which was who was to be the city's chief of police, of great public interest and concern to the people of West Helena.

It is regrettable that the respondent was not told of the complaint before the hearing, and was not told that it was about to be publicized. The party revealed the information in a public setting, after taking advantage of the opportunity to file whatever complaint he chose, thus violating the spirit of the Rules of the

Arkansas Judicial and Disability Commission. Although we are sensitive to the concerns raised by the respondent, we find that, in this particular case, they are insufficient to counterbalance the public's interest in what transpires at judicial proceedings that are open to the public. That very weighty interest is protected by the First Amendment and by the heavy presumption against prior restraints that the First Amendment justifies. The reasons for the restraining order advanced by the respondent are insufficient to justify its breadth or to justify the suppression of the testimony given by Mayor Weaver. Once Mayor Weaver gave his testimony in open court, the respondent could not undo what had been done by attempting to suppress the testimony after the fact. Therefore, we conclude that the respondent's restraining order constitutes a plain, manifest, clear, and gross abuse of discretion, and accordingly we issue a writ of *certiorari* to the respondent, directing him to revise his order of January 6, 2005, in accordance with this opinion.

HANNAH, C.J., concurs.

JIM HANNAH, Chief Justice, concurring. I concur in the decision of the majority. This petition was previously considered by this court in *Helena Daily World v. Phillips County Circuit Court*, 361 Ark. 146, 205 S.W.3d 134 (2005). In that per curiam opinion, we granted the request that certain documents be certified to us under seal, and we declined to address the remaining issues until those documents were received.

As noted, the testimony that is the subject of the restraining order was given in open court. A courtroom has been characterized a "particularly public forum." *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990). The rule is that "there is nothing that proscribes the press from reporting events that transpire in the courtroom." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 568 (1976). As the majority notes, this court has stated that, "[u]nder *Nebraska Press*, trial judges may not order reporters not to reveal lawfully acquired information once they have been admitted to the courtroom." *Arkansas Democrat-Gazette v. Zimmerman*, 341 Ark. 771, 781, 20 S.W.3d 301, 306 (2000). As the majority also notes, this court in *Arkansas Gazette Co. v. Lofton*, 269 Ark. 109, 110-11, 598 S.W.2d 745, 746 (1980), stated that:

> Any restraint on the freedom of the press, even though narrow in scope and duration, is subject to the closest scrutiny and will be

upheld only upon a clear showing that an exercise of this right presents a clear and imminent threat to the fair administration of justice. *U.S. v. CBS, Inc.*, 497 F.2d 102 (5th Cir. 1974). Any prior restraint bears a heavy presumption against its constitutional validity, and the government carries a heavy burden of demonstrating justification for its imposition.

In *United States v. Quattrone*, 402 F.3d 304, 308 (2d Cir. 2005), the court stated that:

> A judicial order forbidding the publication of information disclosed in a public judicial proceeding collides with two basic First Amendment protections: the right against prior restraints on speech and the right to report freely on events that transpire in an open courtroom.

The presumption against prior restraint is strong and any restraint will be subjected to close scrutiny by this court; however, the presumption is not absolute. There are exceptions where prior restraint will be allowed, for example, where it is required to provide a fair trial. *See, e.g., Quattrone, supra.* The testimony at issue concerns an unsubstantiated complaint filed with the Arkansas Judicial Discipline and Disability Commission. Anyone may file a complaint with the Commission, and the fact that a complaint has been filed means nothing more than someone has complained. It does not indicate that any action whatever has been taken by the Commission.

In support of the restraint, it is argued that Ark. Code Ann. § 16-10-404(b)(2) (Repl. 1999), as well as protection of a judge's reputation and preservation of public confidence in the judicial system, provides justification. However, although paragraph (b)(2) provides that all proceedings held prior to a determination of probable cause on the complaint are to be confidential, that is a requirement placed on the Commission in carrying out its duties. The filing of a complaint with the Commission does not mean that anyone who happened to hear of the complaint is subject to judicial restraint. Too, as already noted in this case, the disclosure was made in open court, and "[o]nce announced to the world, the information lost its secret characteristic. . . ." *In re Charlotte Observer*, 921 F.2d at 50.

However, only what was exposed to the world is at issue. What occurred after the parties went into chambers is not subject to disclosure, and disclosure of that discussion is not sought. It is

regrettable that the court was not told before the hearing that a complaint had been filed with the Commission. However, I concur in the decision that the testimony given in open court is not subject to protection by injunction.