Cite as 2022 Ark. 205

# SUPREME COURT OF ARKANSAS

No. D-22-613

|  |  |
|---|---|
|  | **Opinion Delivered:** November 18, 2022 |
| ARKANSAS JUDICIAL DISCIPLINE AND DISABILITY COMMISSION<br>PETITIONER | PETITIONER'S REPORT AND AMENDED REPORT OF UNCONTESTED SANCTION |
| V. |  |
| ROBIN CARROLL, CIRCUIT JUDGE<br>RESPONDENT | <u>EXPEDITED PETITION GRANTED; MODIFIED SANCTION OF SUSPENSION WITHOUT PAY IMPOSED</u>. |

**PER CURIAM**

On September 30, 2022, petitioner Arkansas Judicial Discipline and Disability Commission ("Commission") filed its report of uncontested sanction pursuant to Arkansas Judicial Discipline and Disability Commission Rule 12(D) following its investigation of complaints against respondent, Judge Robin Carroll of the Thirteenth Judicial Circuit. The Commission and Judge Carroll agreed to recommend to this court a suspension without pay for ninety days, with thirty days held in abeyance for one year. Judge Carroll also agreed to certain remedial measures. On October 5, 2022, we ordered the Commission to file the record in this matter with this court within fifteen days and suspended Judge Carroll without pay pending our receipt and review of the record, with the suspension to begin on October 10. *Ark. Jud. Discipline & Disability Comm'n v. Carroll*, 2022 Ark. 175, 652 S.W.3d 560. The

Commission filed an amended report of uncontested sanction and request for expedited consideration on October 14, 2022, stating that the only record that could be submitted to this court was the letter of sanction and recommendation of suspension already provided. We issued a second per curiam on October 21, 2022, ordering the Commission to file with this court the entire record compiled in this matter, including the investigative files, by October 24 and directing that the materials be filed under seal due to their confidential nature. *Ark. Jud. Discipline & Disability Comm'n v. Carroll*, 2022 Ark. 189. We noted in that per curiam, while Arkansas Judicial Discipline and Disability Commission Rule 7 protects certain material from being disclosed to the public, the Commission and its executive director have erroneously interpreted that language to preclude our court from reviewing this material. This is simply not the case, as it would render this court's review meaningless. On October 24, the Commission filed the materials as ordered. We now grant the Commission's expedited petition and modify the recommended sanction by suspending Judge Carroll without pay for eighteen months, with six of those months held in abeyance for one year upon his return to the bench contingent on his compliance with certain remedial measures. In addition, Judge Carroll is ordered to perform an assessment and complete the corresponding plan with the Judges and Lawyers Assistance Program ("JLAP"), as discussed in more detail later in this per curiam.

Judge Carroll has served as circuit court judge for Division Four of the Thirteenth Judicial District, which is composed of Calhoun, Cleveland, Columbia, Dallas, Ouachita, and Union Counties, since 2013. The report and amended report of uncontested sanctions

2

arise from complaints filed with the Commission in JDDC cases #21-284 and #22-192. The Commission alleged three separate fact patterns of judicial misconduct in its report. The first fact pattern summarized Judge Carroll's dismissal of cases without due process, his actual bias, and his failure to recuse himself. Specifically, prior to August 2021, Judge Carroll told the county sheriff to remove a particular deputy sheriff from the courtroom and advised the sheriff in chambers that he needed to fire the deputy. Next, on August 18, 2021, Judge Carroll contacted a public defender by phone and stated that he would dismiss cases involving the deputy sheriff that day if the public defender made the motions to dismiss in court. Judge Carroll then prompted the public defender to move for dismissal in open court, over the objection of the prosecuting attorney, and stated that the cases would be dismissed because the deputy sheriff had "zero credibility with myself or the prosecutor's office" and that any other private counsel who had cases based on the deputy's testimony would have their cases dismissed on motion. As a result, two private attorneys came forward, and Judge Carroll dismissed those cases as well.

The second fact pattern discussed in the Commission's report pertained to Judge Carroll's attempts to exert improper influence over cases involving the Arkansas Game and Fish Commission ("AGFC") in other courts. In April 2021, Judge Carroll spoke with a district court judge assigned to an AGFC case that involved a violation of regulations on turkey hunting and discussed the case in detail. The district court judge recused himself due to that conversation, and another judge had to be assigned. In January 2022, Judge Carroll called the Colonel of the AGFC enforcement division and referenced two separate cases,

3

stating that "one more ticket needs to go away before trial." Judge Carroll claimed that the case would be embarrassing for the agency and vouched for the defendant. He then contacted multiple people, including the (1) former director of the AGFC, (2) the Colonel of Enforcement, (3) the special prosecuting attorney, (4) defense counsel, and (5) the defendant, and provided the attorneys with a case citation that he believed pertained to the legality of the AGFC's authority to search. During the trial, the defense made arguments related to the agency's authority to search, and the defendant was ultimately acquitted by the assigned judge.

Finally, in the third fact pattern, the Commission alleged that Judge Carroll, over the course of several months, repeatedly failed to call his full docket on the record and canceled court numerous times without appropriate prior notice to litigants, attorneys, witnesses, or law enforcement. This would occur even after the defendants had been transported and housed at the local jail at the individual counties' expense. Additionally, deputy prosecutors or public defenders would have to request that Judge Carroll's trial court assistant mail notices to defendants with the new court dates because official orders to appear were not always provided to defendants in court or on the record. Judge Carroll also routinely failed to make clear docket entries.

The Commission claimed that Judge Carroll violated Rules 1.1, 1.2, 1.3, 2.2, 2.3, 2.4, 2.5, 2.6, 2.9, and 2.11 of the Arkansas Code of Judicial Conduct. With regard to his dismissal of cases and failure to recuse himself from proceedings involving the deputy sheriff, the Commission found that Judge Carroll breached his duty to the public and undermined

4

the fair and impartial administration of justice, thereby fueling distrust of all judges. Further, the Commission stated that "[t]he abuse of judicial office to benefit friends or 'connected' individuals is one of the most egregious types of judicial misconduct" and is both corrupt and intolerable. The Commission indicated that had there been clear proof that Judge Carroll's improper meddling had affected the rulings in those cases, he would have been in jeopardy of removal from office.[1] A suspension without pay was recommended by the Commission due only to his cooperation, admission of guilt, mitigation, and acceptance of the remedial measures.

Judge Carroll has admitted the allegations set forth above and has agreed that a suspension without pay is appropriate. He has also agreed that the Commission's recommended sanction must be reviewed by this court to determine whether we concur with that recommendation, including the length of the suspension. *See* Ark. Jud. Discipline & Disability Comm'n R. 12(D). The Commission has submitted its report and amended report containing its recommendation to this court for expedited review pursuant to Arkansas Judicial Discipline and Disability Commission Rule 12(B).

We now review this matter to decide the appropriate discipline. This court reviews matters of judicial discipline de novo. *Ark. Jud. Discipline & Disability Comm'n v. Sims*, 2021 Ark. 126. The judicial power is vested in this court pursuant to Amendment 80 to the

---

[1]In this instance, the Commission's emphasis was misplaced. Judge Carroll's attempts to improperly influence judicial proceedings should be the focus of the Commission's investigation, regardless of whether he was effective in those attempts.

Arkansas Constitution. Ark. Const. amend. 80, §1. As a result, we have a duty to exercise superintending control over the courts of this state. Ark. Const. amend. 80, § 4.

We have recognized certain factors to be considered in determining the appropriate sanction for judicial misconduct, including (1) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (2) the nature, extent, and frequency of occurrence of the acts of misconduct; (3) whether the misconduct occurred in or out of the courtroom; (4) whether the misconduct occurred in the judge's official capacity or in his private life; (5) whether the judge has acknowledged or recognized that the acts occurred; (6) whether the judge has evidenced an effort to change or modify his conduct; (7) the length of time of service on the bench; (8) whether there have been prior complaints about this judge; (9) the effect the misconduct has upon the integrity of and respect for the judiciary; and (10) the extent to which the judge exploited his position to satisfy his personal desires. *Jud. Discipline & Disability Comm'n v. Thompson*, 341 Ark. 253, 16 S.W.3d 212 (2000).

As the Commission found in its report, Judge Carroll's misconduct was not an isolated instance but rather an extended pattern of misconduct, particularly with regard to his docket management over a prolonged period. In addition, all of the misconduct occurred while he was on the bench or in his official capacity as a circuit court judge. Unfortunately, it was several months into the Commission's investigation, and after he had retained an attorney, before Judge Carroll recognized his wrongful behavior and made any effort to modify his conduct. Further, he committed these acts despite the benefit of many years of experience on the bench, as well as his experience as a prosecuting attorney. Even though

the Commission found no evidence that Judge Carroll benefitted monetarily from his improper actions, his behavior has had an exceedingly negative impact on the integrity of and respect for the judiciary as a whole. We also cannot ignore that Judge Carroll's dismissal of criminal cases based on his actual bias against the deputy sheriff impacted not just the defendants but also the victims and their families.

After considering the factors set forth above and the seriousness of the conduct at issue, we conclude that the length of the suspension recommended by the Commission is insufficient. The Commission itself equated the scope, impact, and pattern of Judge Carroll's actions to "one of the most egregious types of judicial misconduct," along with being corrupt and intolerable. We therefore modify the recommended sanction to an eighteen-month suspension, with six of those months held in abeyance for one year upon his return to the bench. As previously ordered by this court, Judge Carroll's suspension began on October 10, 2022. The six months are held in abeyance on the condition that he adhere to the agreed-upon remedial measures listed below:

- Any allegations of direct or indirect retaliation or harassment by Judge Carroll toward any of the officials or other witnesses the Commission interviewed in this case will be fully investigated and are grounds for the filing of a new complaint and/or the revocation of the suspension held in abeyance in this sanction;

- Any false or misleading comments in private or public forums about the basis for the agreement or the investigations would be a violation of this agreement;

- Allow the Commission monitors full access to courtrooms for proceedings, to records kept in his official capacity, and to the staff, as needed;

- Be subject to attendance checks at his office. This may include returning calls when asked or random visits by monitors to make sure he is working and is accessible to court personnel;

- Attend an online class presented by the National Judicial College on judicial ethics and docket management. Classes that would fulfill this requirement will be sent to his counsel by the Executive Director. He needs to attend and provide proof of his attendance within twelve months of the date his suspension was imposed;

- Refrain from habits that caused some of the issues mentioned in the report, including needless absence from his chambers, overuse of his signature stamp, and failure to call the whole docket on the record.

While the Commission indicated in its report that Judge Carroll had voluntarily attended a class through JLAP, we further order him to undergo an assessment with JLAP within fourteen days and to immediately and fully comply with any and all steps required for and until completion of the plan resulting from the assessment. *See* Ark. Judges & Lawyer Assistance Program R. 7 (providing that JLAP may accept referral of judges under investigational, provisional, or probational status from the Commission or any disciplinary agency with disciplinary authority and that JLAP shall provide progress reports or reports of non-compliance). We also direct him to sign any and all disclosure forms necessary to allow JLAP and the Commission to have access to his status and compliance at all times. Finally,

we refer Judge Carroll to the Supreme Court Committee on Professional Conduct and request that the committee take whatever action it believes his actions warrant under the Rules of Professional Conduct. A petition for rehearing of this court's decision, if any, must be filed within five days of the filing of this per curiam.

Expedited petition granted; modified sanction of suspension without pay imposed.